FILED

2010 OCT 19  AM 10: 57

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY _____

Fee Paid

ARAM NERSESIAN, In Pro Per
23302 BEAUMONT STREET,
SANTA CLARITA, CA 91354
Tel: (661) 360-9391
Fax: (888) 755-1416

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

**CV10-07820-MMM(JCGx)**

ARAM NERSESIAN, an individual,

     Plaintiff,

    v.

COUNTRYWIDE BANK, a Business Entity,
form unknown; STEWART TITLE OF
CALIFORNIA INC., a Business Entity, form
unknown; BANK OF AMERICA, a Business
Entity, form unknown; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC. a Business Entity, form unknown; and
DOES 1-20 inclusive,

         to

         Defendants.

Case No.:

**COMPLAINT** FOR:

1. DECLARATORY RELIEF;
2. INJUNCTIVE RELEIF;
3. DETERMINE NATURE, EXTENT AND VALIDITY OF LIEN;
4. CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALING;
5. VIOLATIONS OF TILA;
6. VIOLATIONS OF RESPA;
7. VIOLATION OF CALIFORNIA CIVIL CODE § 2932.5
8. RECISSION;
9. FRAUD;
10 UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP);
11. BREACH OF FIDUCIARY DUTY;
12. UNCONSCIONABILITY;
13. PREDATORY LENDING; CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200;
14. QUIET TITLE

**Jury Trial Demanded**

Clerk, US District Court
C OURT 4512

OCT 1 9 2010

PAID

## INTRODUCTION

COMES NOW the Plaintiff ARAM NERSESIAN (hereinafter referred to as "Plaintiff" or "Borrower"), alleges as follows:

## PARTIES

1.    At all times relevant herein, Plaintiff was over the age of eighteen and is and was a resident of the City of SANTA CLARITA, County of LOS ANGELES, State of California.

2.    The real estate that is the subject of this litigation is 23302 BEAUMONT ST., SANTA CLARITA, CA 91354 (hereinafter referred to as "Subject Property").

3.    Plaintiff purportedly entered into a loan repayment and security agreement on or about, 6/16/2006 with Defendant COUNTRYWIDE BANK, (hereinafter referred to as "COUNTRYWIDE BANK"), which required Plaintiff to repay a loan of $741,300.00 to COUNTRYWIDE BANK.

4.    Plaintiff is informed and therefore believes that Defendant COUNTRYWIDE BANK, a Business Entity, form unknown, is a corporation, authorized to do business in the State of California. COUNTRYWIDE BANK was the original mortgage lender with an unknown business addresses.

5.    Plaintiff is informed and therefore believes that Defendant BANK OF AMERICA FINANCE (hereinafter referred to as "BANK OF AMERICA"), a Business Entity, form unknown, is a corporation, authorized to do business in the State of California.  BANK OF AMERICA was the original mortgage broker with an unknown business address.

6.    Plaintiff is informed and therefore believes that Defendant STEWART TITLE OF CALIFORNIA INC., (hereinafter referred to as "STEWART TITLE OF CALIFORNIA INC."), a Business Entity, form unknown, is a corporation, authorized to do business in the State of California.

STEWART TITLE OF CALIFORNIA INC. is the original Escrow/Title Company for the loan, with an unknown business address.

7. Plaintiff is informed and therefore believes that MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (hereinafter referred to as "MERS"), a Business Entity, form unknown, is a corporation, authorized to do business in the State of California. MERS is the current mortgage nominee/beneficiary and has a business address of P.O. Box 2026. Flint, MI 48501-2026.

8. The Defendants (each of them named in paragraphs 1 through 20 above, shall collectively be referred to as "DEFENDANTS") named herein "all persons unknown", claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to Plaintiff's title thereto and as DOES I through 20 (hereinafter referred to as "UNKNOWN DEFENDANTS") are unknown to Plaintiff. These unknown Defendants and each of them claim some right, title, estate, lien or interest in the Subject Property hereinafter described adverse to Plaintiff's title and their claims and each of them constitute a cloud on Plaintiff's title to the Subject Property. Plaintiff is informed and therefore believes, and on that basis alleges that each fictitiously named herein as a DOE is responsible for the events happening hereinafter alleged. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendant's when ascertained.

9. Plaintiff is informed and therefore believes and on that basis alleges that at all times mentioned herein, the UNKNOWN DEFENDANTS are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed Defendant in this Complaint. Plaintiff is informed and therefore believes and on that basis alleges that each of said Defendants is and at all relevant times herein, was acting within the scope and consent of the remaining named and unnamed Defendants.

10.     Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

11.     During the processing and sale of this loan to Plaintiff, COUNTRYWIDE BANK and BANK OF AMERICA were aware that "payment shock" would occur because of the manner in which Defendants qualified Plaintiff for the current loan product.  The underwriting process and failure to properly verify Plaintiff's assets, income, debt and risks created a circumstance for Plaintiff wherein foreclosure would be inevitable and Defendants were aware of this fact. COUNTRYWIDE BANK also increased a Yield Spread Premium to BANK OF AMERICA. COUNTRYWIDE BANK then has the opportunity to recoup the premium fees paid to BANK OF AMERICA upon foreclosure. As a result of the lack of ownership in the Subject Property, coupled with the excessive fees and unfair structure, Plaintiff suffered tremendous "payment shock" and was required to investigate the actions of the Defendants.

12.     As a result of their mortgage activities, Defendants and each of them are and were subject to and must comply with the Federal Truth In Lending Act (hereinafter referred to as "TILA")[15 U.S.C. §1601-16666j]; [24 C.F.R § 3500.1-3500.17]; the Real Estate Settlement Procedures Act (hereinafter referred to as "RESPA")[12 U.S.C. § 2601 et.seq.]; California Business and Professions Code [§ 17200; Federal Trade Commission § 5]; 24 Code of Federal Regulations § 3500.10; § 10241.3; Unfair and Deceptive Business Practices and Acts [UDAP Statutes]; and

California Civil Codes §1918-21, § 1916.7 – multiple sections; and Code of Federal Regulations § 226.23(3), among others.

## JURISDICTION

13. Jurisdiction of this court is involved due to the presentation of a Federal question  pursuant to the Federal statutes outlined above and 28 U.S.C. §§ 1331 and 1337.

14. This Court has supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. § 1367.

15. This Court has jurisdiction to render the declaratory judgment Plaintiff seeks pursuant to 28 U.S.C. § 2201.

16. Venue is proper within this district pursuant to 28 U.S.C. § 1391(b), because: (i) the real property exists within said district, (ii) the Defendants, and each of them, has/have or is/are doing business within the district; and (iii) further, the *pendente* causes of action pursuant to California law concerns real property within the County of LOS ANGELES within this district.

## FACTUAL ALLEGATIONS

17.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

18.    For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home.  Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure.  Further, lenders frequently qualify borrowers for loans that they cannot and will not be able to afford.  This is done to lead to a maximization of profits for the lenders

without cause or concern for borrower's financial condition, their credit and their livelihoods or homes. The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics. All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America. Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

19. The loan product sold to Plaintiff in this case was exactly the kind of loan that has contributed to our national problem. The Defendants were aware of this trend, and possessed the foresight to advise Plaintiff of this risk. They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiff faces the potential of losing their home to the very entity and entities who placed them in this position.

20. On or about 6/16/2006 (hereinafter referred to as "Closing Date") Plaintiff allegedly entered into a consumer credit transaction with COUNTRYWIDE BANK by obtaining a mortgage loan of $703,200.00 secured by Plaintiff's principal residence, (Subject Property). This note was allegedly secured by a First Trust Deed on the Property in favor of COUNTRYWIDE BANK.

21.     Liability continues to exist on the part of COUNTRYWIDE BANK even if no longer in possession of the note due to sale, transfer or assign because under the Federal Truth In Lending Act § 1640, if any violation by COUNTRYWIDE BANK that occurred (before its sale to COUNTRYWIDE BANK), were apparent on the face of the disclosures, then assignee liability exists. For example, in Cazares v Pacific Shore Funding, C.D. Cal. 1/3/2006, an assignee that actively participated in original lender's act and dictated loan terms may be liable under UDAP statutes.

22. Each subsequent Defendant who has participated in, been assigned or been transferred Rights, or holds a position or interest under this loan agreement, including COUNTRYWIDE BANK, BANK OF AMERICA, STEWART TITLE OF CALIFORNIA INC., MERS and UNKNOWN DEFENDANTS (hereinafter referred to collectively as "Defendants") failed to perform their due diligence in investigating the legal requirements that this loan should have been processed within.  As a result, Defendants now hold an interest in a loan that was improperly handled from its inception.

23.     The terms of the transaction with COUNTRYWIDE BANK are not clear or conspicuous, nor are consistent, and are illegal, and include, for example, extremely high ratios with respect to Plaintiff's Income and Liabilities. The loan was 100% of the value. The Plaintiff therefore had no value in the home. The Plaintiff would not be able to refinance out of the high rate, due to lack of equity.  Plaintiff was given a loan that was an inappropriate loan. The loan was more expensive in terms of fees, charges and or interest rates than alternative financing for which Plaintiff could have qualified.  The terms of the loan given to Plaintiff are such that [he / she] can never realistically repay the loan.

24.     These acts of deception violate several statutes and in essence creates an illegal loan. Further, this loan was underwritten without proper due diligence by COUNTRYWIDE BANK as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax returns nor verify income or employment.

25.     In addition, and unbeknownst to Plaintiff, COUNTRYWIDE BANK illegally, deceptively and/or otherwise unjustly, qualified Plaintiff for a loan which COUNTRYWIDE BANK knew or should have known that Plaintiff could not qualify for or afford by, for example, the underwriter has approved this loan based upon credit scores and the borrower's Stated Income only. Had COUNTRYWIDE BANK used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining the debt to income ratio, Plaintiff would not have qualified for the loan in the first place.  Consequently, COUNTRYWIDE BANK sold Plaintiff a loan product that it knew or should have known would never be able to be fully paid back by Plaintiff.  COUNTRYWIDE BANK ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiff a deceptive loan product.

26. There was no determination of the ability of the borrower to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

27. Defendants, and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants.

28. The Defendant's utilized excessive closing costs/fees that are actionable for treble

damages pursuant to 12 U.S.C. §2607.  Those fees include, but are not limited to: The mortgage broker's was loan origination fee and a Yield Spread Premium by COUNTRYWIDE BANK plus processing fees. COUNTRYWIDE BANK paid BANK OF AMERICA premiums for increased yields in rates. In the case of an adjustable loan the lenders higher yield is in the margin. The higher the margin for the borrower the higher the premium to the broker.

29. The purpose of entering into the above-described mortgage loan transactions was for Plaintiff to eventually own the Subject Property.  That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' actions alleged herein.

30. Plaintiff is informed and believes the following legal violations were incurred during the handling and processing of Plaintiff's loan:

31. Plaintiff is informed and believes and therefore alleges that the underwriter approved this loan based only upon a stated income and a medium to high risk credit score and a belief that the property would continue to increase in value and that the Plaintiff should have been declined for this loan.

32. Plaintiff is informed and believes and therefore alleges that based on a Real Income Analysis, with the type of take home income Plaintiff possess and that was clearly disclosed to Defendants, that the borrower would not be able to support the home payment over an extended period.

33. Plaintiff is informed and believes and therefore alleges that Defendants failed to provide Plaintiff with written notice of the furnishing of negative credit information to consumer reporting agency after Defendants furnished such negative credit information about Plaintiff.

34. Plaintiff is informed and believes and therefore alleges that Defendants breached their

fiduciary duty to Plaintiff because they knew or should have known that the Plaintiff will or had a strong likelihood of defaulting on this loan, they have a fiduciary duty to the borrower to not place them in that loan (in harms way).

35. Plaintiff is informed and believes and therefore alleges that it was in the best interest of the Defendants to promote the particular program for which they approved the Plaintiff. It led to a maximization of profits for the Defendants, with no concern for the Plaintiff financial position or livelihood.

36. Plaintiff is informed and believes and therefore alleges that as a result of the practices of Defendants, and each of them throughout the handling of this loan, that such practices are consistent with the definition of predatory lending, and encompass numerous characteristics that indicate such.

37. Plaintiff is informed and believes and therefore alleges that Defendants provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the Federal Trade Commission Act.

38. Plaintiff is informed and believes and therefore alleges that Defendants engaged in unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of California Business and Professions Code § 17200 and the Unfair and Deceptive Acts and Practices statutes.

## FIRST CAUSE OF ACTION

### Declaratory Relief

### (Against All Defendants)

39. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

40. An actual controversy has arisen and now exists between Plaintiff and Defendants regarding their respective rights and duties, in that Plaintiff contends that Defendants did not have the right to foreclose on the Subject Property because Defendants' security interest in the Subject Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations 3500.10, the California Civil Code, California Business and Professions Code, UDAP, TILA and RESPA.   Thus the purported power of sale by Defendants no longer applies.   Plaintiff further contends that Defendants do not have the right to foreclose on the Subject Property because Defendants did not properly comply with proper delivery procedures under RESPA.  Plaintiff further contends that the Defendants perpetrated a fraudulent loan transaction.

41.   Plaintiff requests that this Court find the purported power of sale contained in the Loan of no force and effect at this time, because Defendants actions in the processing, handling and attempted foreclosure of this loan has contained numerous violations of State and Federal laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants.  Plaintiff further requests that title to the Subject Property remain in Plaintiff's name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation

42.   As a result of the Defendants' actions, Plaintiff has suffered damages according to proof, and seeks declaratory relief that Defendants' purported power of sale is void and has no force or effect against the Subject Property.

43.   Further, Defendants' actions have been willful, knowing and malicious.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

### Injunctive Relief

### (Against All Defendants)

44.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though

fully set forth herein.

45.     Defendants have commenced a foreclosure action under the Note and have scheduled a non-judicial sale. Said sale will cause Plaintiff great and irreparable injury in that real property is unique.

46. The wrongful conduct of Defendants, unless restrained and enjoined by an order of the court, will cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of the property and will lose his home

47. Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it is and will be impossible for Plaintiff to determine the precise amount of damage Plaintiff will suffer.

WHEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CAUSE OF ACTION

### Determine Nature, Extend and Validity of Lien under

### California Commercial Code §9313

### (Against All Defendants)

48.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

49.     A written instrument that purports to be a Deed of Trust executed by Plaintiff is presently in existence and under Defendant's control. The Deed of Trust is voidable in that there is no enforceable underlying promissory note for the deed of trust to secure.

50.    Prior to the commencement of this case, COUNTRYWIDE BANK purportedly received a copy of a promissory note from Plaintiffs in the form of a Deed of Trust. Plaintiff alleges on information and belief that neither COUNTRYWIDE BANK, BANK OF AMERICA, STEWART TITLE OF CALIFORNIA INC., MERS, nor any other, unknown holder in due course, did not deliver to STEWART TITLE OF CALIFORNIA INC. or COUNTRYWIDE BANK the original promissory note nor did defendants ever take actual possession of the original promissory note as required under California Commercial Code §9313.

51.    Defendants failed to comply with California Commercial Code §9313.

52.    As a result, defendants never perfected their interest in the above referenced deed of trust.

53.    Said unperfected security interest of defendant is void as to plaintiff by virtue of 11 U.S.C. §544.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

### Contractual Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

54.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

55.    Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement.  The covenant implies that in all contracts

each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

56. The terms of the Loan imposed upon Defendants a duty of good faith and fair dealing in this matter.

57. Defendants enjoyed substantial discretionary power affecting the rights of Plaintiff during the events alleged in this Complaint. Defendants were required to exercise such power in good faith.

58. Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiff when Defendants:

    I.  Willfully withheld numerous disclosures;

    II.  Willfully withheld notices in regard to excessive fees and finance charges including Yield Spread Premiums, Underwriting standards, Good Faith Estimates, Disclosures of additional income due to interest rate increases, and failure to disclose when negative credit scores were disseminated;

    III.  Willfully placed Plaintiff in a loan that he did not qualify for, could not afford, and subjected him to further financial detriment, while providing Defendants with financial benefits they would not have otherwise enjoyed.

59. As a result of Defendants' breach of this covenant, Plaintiff has suffered injury and has caused Plaintiff the threat of loss of [his / her] home. Plaintiff has incurred and continues to incur legal fees, including attorney fees and costs, as well as expenses to right this wrong.

60. Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FIFTH CAUSE OF ACTION

### Violation of TILA, 15 U.S.C. § 1601, et.seq.

### (Against All Defendants)

61.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

62.     The Truth In Lending Act (TILA) applies because the transaction involves the extension of credit to a consumer for personal, family or household purposes that is subject to a finance charge and/or payable by written agreement in more than four installments per 15 U.S.C. §§ 1601-1666j.

63.     Defendants violated TILA by failing to provide Plaintiff with accurate material disclosures required under TILA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

64.     Plaintiff could not nor would not be able to afford this loan.  The risks versus the Debt to Income Ratio was not specifically and clearly disclosed to Plaintiff.

65.     COUNTRYWIDE BANK failed to provide Plaintiffs with a correct payment schedule, a properly disclosed interest rate, an accurate Good Faith Estimate or a disclosure relating to Property/Hazard Insurance, all required under the Code of Federal Regulations.

66.   Any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to Defendants' failure to effectively provide the required disclosures and notices.

67.   Per 12 CFR § 226.19(b), COUNTRYWIDE BANK was required to provide the Plaintiffs with the "Consumer Handbook on Adjustable Rate Mortgages" (CHARM) booklet. No such booklet was received which is a violation of the TILA laws.

68.   COUNTRYWIDE BANK was further required to fully disclose the terms of the financing to the Plaintiffs and again, there is no evidence to support such disclosure was provided to the Plaintiffs. In this case, with such a volatile loan, the Plaintiffs should have been fully counseled on the terms and the how such affected the property.

69.   An actual controversy now exists between Plaintiff, who contends [he / she] has the right to rescind the loan on the Subject Property alleged in this Complaint, and based on information and belief, Defendants deny that right.

70. As a direct and proximate result of Defendants' violations Plaintiff has incurred and continues to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

71. Defendants were unjustly enriched at the expense of Plaintiff who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

72. Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION

### Violation of Real Estate Settlement and Procedures Act (RESPA)

### (Against All Defendants)

73.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

74. RESPA applies because a  lender that regularly extends federally related mortgage loans aggregating more than $1 million per year, and intended for the purchase of a one- to four-family residential property are subject to RESPA per 12 U.S.C. §§ 2601-2617.

75. Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

(1) Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;

(2) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA.

76.     To earn a Yield Spread Premium (YSP), the broker will increase the amount of the margin that the borrower will pay, which increases the interest rate and the monthly payment. The increase in the monthly payment multiplied over three years will be the Yield Spread Premium. It takes the borrower three years to repay the Yield Spread Premium. Once the three-year repayment

period has ended, the margin on the interest rate does not drop. Instead, the borrower continues to pay at the same interest rate and the lender reaps the benefits of the higher payment.

77     This was purported to Plaintiff by explaining that the Yield Spread Premium was a "credit for closing costs" or other sort of bait and switch tactic.  The Yield Spread Premium significantly affects the borrower's payment and financial situation. By allowing BANK OF AMERICA to earn Yield Spread Premium, COUNTRYWIDE BANK would earn excessive fees, to be proven, over the life of the loan, if carried to maturity, as a result of the higher interest rate.  Both COUNTRYWIDE BANK and BANK OF AMERICA have enjoyed the benefits of Unjust Enrichment.

78.     The Yield Spread Premium was not explained to the Plaintiff that [he / she] would be paying this through [his / her] loan payments. COUNTRYWIDE BANK and BANK OF AMERICA also failed to provide a separate fee agreement regarding Yield Spread Premium, properly disclosing this fact.

79. No separate fee agreements, regarding Yield Spread Premium that the broker and the lender have enjoyed were ever provided, resulting in the benefits of Unjust Enrichment for COUNTRYWIDE BANK and BANK OF AMERICA.

80. Defendants violated RESPA because the payments to the mortgage broker and to the lender were misleading and designed to create a windfall. These actions were deceptive, fraudulent and self serving.

81. As a proximate result of Defendants' actions, Plaintiff has been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SEVENTH CAUSE OF ACTION

### Violation of California Civil Code § 2932.5

**(Against All Defendants)**

82.  Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

83.  Where a power to sell real property is given to a mortgagee, or other entity whom has placed an encumbrance on title, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.

84.  Mortgage Electronic Registration System (MERS) has been named the beneficiary for this loan. MERS was created to eliminate the need for the executing and recording of assignment of mortgages, with the idea that MERS would be the mortgagee of record. This would allow MERS to foreclose on the property, and at the same time, assist COUNTRYWIDE BANK in avoiding the recording of the Assignments of Beneficiary on loans sold. This saved COUNTRYWIDE BANK money in manpower and the costs of recording these notes. It was also designed to "shield" investors from liability as a result of lender misconduct regarding the process of mortgage lending.

85.  MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans. By designating certain member employees to be MERS corporate officers, MERS has created a situation whereby the foreclosing agency and MERS "designated officer" has a conflict of interest.

86.  Since neither MERS nor the servicer have a beneficial interest in the note, nor do they receive the income from the payments, and since it is actually an employee of the servicer signing the Assignment in the name of MERS, the Assignment executed by the MERS employee is illegal. The actual owner of the note has not executed the Assignment to the new party. An assignment of a mortgage in the absences of the assignment and physical delivery of the note will result in a nullity.

87.    It must also be noted that the lender or other holder of the note registers the loan on MERS. Thereafter, all sales or assignments of the mortgage loan are accomplished electronically under the MERS system. MERS never acquires actual physical possession of the mortgage note, nor do they acquire any beneficial interest in the Note.

88.    The existence of MERS indicated numerous violations of the California Business and Professions Code as well as Unfair and Deceptive Acts and Practices due to the conflicting nature and identity of the servicer and the beneficiary. Each of these practices were intentionally designed to mislead the borrower and benefit the lenders.  One can only conclude after a reading of this section, that MERS has no legal standing to foreclose.

89.    Additionally, the foreclosing party does not have a recorded assignment giving them a right to foreclose as evidenced by the chain of recordings on the property which are as follows:

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

## EIGHTH CAUSE OF ACTION

### Rescission

### (Against All Defendants)

90. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

91.  Plaintiff is entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) RESPA; 3) Fraudulent Concealment; and 4) Public Policy Grounds, each of which provides independent grounds for relief.

92.  The Truth In Lending Act, 15 U.S.C §1601, et.seq. extends Plaintiff's right to rescind

a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Borrower's right to rescind.  Here, Defendants have failed to properly disclose the details of the loan.  Specifically, the initial disclosures do not initial TIL disclosures, and lack of diligence and collusion on the part of the broker, lender and underwriter to place Plaintiff in a loan he could not afford and would ultimately benefit Defendants.

93.  The public interest would be prejudiced by permitting the alleged contract to stand; Such action would regard an unscrupulous lender.

94.    As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff prays for rescission of the stated loan in its entirety.

## NINTH CAUSE OF ACTION

### Fraud - California Civil Code §1572

### (Against All Defendants)

95. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

96.  Defendants intentionally, willfully and wantonly engaged in the acts with the purpose of deceiving Plaintiff and inducing him to part with their personal and real property buy using a stated income loan.

97.    The credit application and or available W-2's provided by Plaintiff was enough, in addition to the application itself for Defendant's to know what type of loan should be offered, and what the Plaintiff's could not afford.  Any falsification of a credit application by a broker or seller for the purposes of securing a loan is de facto fraud. U.S. v. Robinson, 4th Circuit, 2004.

98.    Defendants engaged in the unlawful suppression of facts or circumstances by one of

the parties to a contract from the other, for self-serving purposes and financial gain, which in justice ought to be made known.

99. This loans was fraudulent because: a) the current loan program creates a belief in Plaintiff that [he / she] will be able to make the payments and is illusory and never really in effect; b) the use of a stated income, without verification and the use of an automatic underwriter fails to reach an appropriate standard while simultaneously inducing Plaintiff's reliance on the qualification process; and c) underwriting a borrower based on the clear and present risk is "knowingly" selling a mortgage loan that will fail.

100. Plaintiff justifiably relied on Defendant's deception, which was the actual and proximate cause of Plaintiff's damages.

101. Plaintiff is entitled to exemplary and punitive damages for Defendants' fraudulent conduct in the sum to be determined at trial. Further, fraudulent concealment avoids the contract.

WHEREFORE, Plaintiff prays for relief as set forth below.

## TENTH CAUSE OF ACTION

### Unfair And Deceptive Business Act Practices (UDAP)

### (Against All Defendants)

102. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

103. Defendants failed to undergo a diligent underwriting process for this loan a alleged in this complaint. They also failed to properly adjust and disclose facts and circumstances relating to Plaintiff's mortgage loan and placed Plaintiff in a loan, by way of stated income and misleading facts, which they should never have been approved for because they could not afford it. Defendants did have that knowledge of these facts, circumstances and risks but failed to disclose them.

Defendants also used various rates and charges to disguise the actual payment schedule and loaned amount.  The Defendants enjoyed unjust enrichment and have profited and deceptively preyed upon Plaintiff and his naïve nature in the industry.

104. By reason of Defendants fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, said Defendant has violated California Business and Professions Code § 17200 et seq. by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiff of her home, equity, as well as her past and future investment.

105. By reason of the foregoing, Plaintiff has suffered and continues to suffer damages in a sum which is, as yet unascertained.

WHEREFORE, Plaintiff prays for relief as set forth below.

## ELEVETH CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Against Defendants)

106.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

107.   Defendants owed a fiduciary duty to Plaintiff and breached that duty by ailing to advise or notify Plaintiff when Defendant's broker knew or should have known that Plaintiff will or has a likelihood of defaulting on the loan, Defendants have a fiduciary duty to the borrower to not place them in that loan (in harms way).

108.   Regarding this loan, it was in the best interest of the Defendants to promote the particular program for which they approved the Plaintiff. It led to a maximization of profits for the Defendants, with no concern for the borrower. A 30-year fixed with less principal or an outright

1  denial of the current loan program would have netted less return for the lender, though better for the

2  borrower.

3      109.   Defendant failed to provide material disclosures regarding the loan and its interest

4  rate to Plaintiff while in the capacity of Plaintiff's Lender.

5

6      110.   Defendants failed to fully comply with TILA regulations and laws designated to

7  protect Plaintiff. The failure to do so placed Plaintiff in a serious disadvantage and potential loss of

8  their home. Such actions are violations of a fiduciary responsibility owed to Plaintiff by Defendants.

9      WHEREFORE, Plaintiff prays for relief as set forth below.

10                    **TWELFTH CAUSE OF ACTION**

11                    **Unconscionability – UCC-2-3202**

12

13                    **(Against All Defendants)**

14      111.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though

15  fully set forth herein.

16

17      112. If the court as a matter of law finds the contract or any clause of the contract to have

18  been unconscionable at the time it was made the court may refuse to enforce the contract, or it may

19  enforce the remainder of the contract without the unconscionable clause, or it may so limit the

20  application of any unconscionable clause as to avoid any unconscionable result.

21

22      113. When it is claimed or appears to the court that the contract or any clause thereof may

23  be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its

24  commercial setting, purpose and effect to aid the court in making the determination.

25

26      114. Here, based on the deception, unfair bargaining position, lack of adherence to the

27

28

119.   The loan does not does not plainly and prominently disclose on the good faith estimate of closing costs the size of any yield spread premium paid directly or indirectly, in whole or in part, to a mortgage loan officer;

120.   Contains loan terms whereby the borrower can never realistically repay the loan, representative of "Bait and Switch" tactics.

121.   This loan is based on a loan application that is inappropriate for the borrowers. For instance, the use of a No Income stated on the loan application from an employed individual who has or can obtain pay stubs, W-2 forms and tax returns.

122.   This loan is underwritten without due diligence by the party originating the loan. There has been no realistic means test for determining the ability of the borrowers to repay the loan. Further, there is a lack of documentation of income or assets and/or job verification.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTEENTH CAUSE OF ACTION

### Quiet Title

### (All Defendants Claiming Any Interest In the Subject Property)

123.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

124.   Plaintiffs is at all times herein mentioned the owner and/or entitled to possession of the Property, until the date of sale that transferred physical possession of the deed of trust to the non-bonafide subsequent purchaser.

125.   Plaintiffs are informed and therefore believes and thereupon alleges that Defendants, and each of them, claim an interest in the Subject Property adverse to Plaintiffs.  However, as a

result of the conduct more fully described in the preceding allegations, the claim of Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in the Property.

126. Plaintiffs therefore seek a declaration that the title to the Subject Property is vested in Plaintiff's alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the Subject Property and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the Subject Property adverse to Plaintiffs.

WHEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff will ask for the following for each Cause of Action sustained:

1. For Compensatory Damages in an amount to be determined by proof at trial.
2. For Special Damages in an amount to be determined by proof at trial.
3. For General Damages in an amount to be determined by proof at trial.
4. For Treble Damages in an amount to be determined by proof at trial.
5. For Punitive Damages as against the individual Defendants.
6. For Attorney's Fees and Costs of this action.
7. For Declaratory Relief, including a declaration that Plaintiff is the prevailing party.
8. For an Injunction, enjoining any foreclosure proceeding on the Subject Property.
9. For a judgment rescinding the Loan and Security Agreement and setting forth terms of restitution.
10. For a judgment ordering that the Defendants provide proof of authority to foreclose by producing the promissory note.
11. Quiet Title.
12. For any prejudgment or other interest according to law.
13. Any other and further relief that the Court considers just and proper.

Dated: 10/19/10

[Attorney for Plaintiff]
ARAM NERSESIAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

## CV10- 7820 MMM (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

ARAM NERSESIAN, In Pro Per
23302 Beaumont Street,
Santa Clarita, CA 91354
Tel: (661) 360-9391
Fax: (888) 755-1416

**FOR OFFICE USE ONLY**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARAM NERSESIAN, an individual<br><br>PLAINTIFF(S)<br><br>v.<br><br>See Attachment to Summon<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV10-07820-MMM (JCGx)<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): _____

**FOR OFFICE USE ONLY**

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Aram Nersesian_____, whose address is _23302 Beaumont Street, Santa Clarita, CA 91354_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___OCT 1 9 2010___

By: ___ANDRES PEDRO___
        Deputy Clerk

(Seal of the Court)
1202

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**FOR OFFICE USE ONLY**

CV-01A (12/07)                                         SUMMONS

| 1 | Name: ___ARAM NERSESIAN, In Pro Se___ |
| 2 | Address: _23302 BEAUMONT ST._ |
| 3 | ___SANTA CLARITA, CA 91354___ |
| 4 | Phone: ___(559) 355-6262___ |
| 5 | Fax: ___(888) 755-1416___ |
| 6 | In Pro Per |

7

## UNITED STATES DISTRICT COURT
8
## CENTRAL DISTRICT OF CALIFORNIA

9  | ARAM NERSESIAN, an individual | CASE NUMBER: |

10

11 | Plaintiff |

12 | v. |

13 | COUNTRYWIDE BANK, STEWART TITLE OF |

14 | CALIFORNIA INC. BANK OF AMERICA, MERS | **ATTACHMENT TO SUMMONS** |

15 | Defendant(s). |

16 COUNTRYWIDE BANK, a Business Entity, form unknown; STEWART TITLE OF CALIFORNIA

17 INC., a Business Entity, form unknown; BANK OF AMERICA, a Business Entity; MORTGAGE

18 ELECTRONIC REGISTRATION SYSTEMS, INC. a Business Entity, form unknown; and DOES

19 1-20 inclusive,

20

21 Defendants.

22

23

24

25

26

27